MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:     2019 ME 121
Docket:       Cum-19-106
Submitted
  On Briefs:  July 18, 2019
Decided:      July 25, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

IN RE CHILD OF WALTER C.

PER CURIAM

[¶1]  Walter C. appeals from a judgment of the District Court (Portland, *Powers, J.*) terminating his parental rights to his child.  He contends that the court erred in its determination that he is parentally unfit and that termination of his parental rights is in the best interest of the child.  We affirm the judgment.

I.  CASE HISTORY

[¶2]  In November 2017, sixteen days after the child was born, the Department of Health and Human Services filed a petition for a child protection order and a request for a preliminary protection order.  *See* 22 M.R.S. §§ 4032, 4034 (2018).  The petition alleged that the father struggled with substance abuse and untreated mental health issues that manifested in him burning himself.  The court (*Janelle, J.*) granted the request for a preliminary protection order, granting custody to the Department, and the child was placed in foster

care.[1]  On February 5, 2018, the court (*Powers, J.*) entered an agreed-upon jeopardy order, and custody of the child remained with the Department.  *See* 22 M.R.S. § 4035(1)-(2) (2018).

[¶3]  The Department petitioned for termination of the father's parental rights on November 30, 2018.[2]  *See* 22 M.R.S. § 4052 (2018).  The court held a single-day hearing on the petition, *see* 22 M.R.S. § 4054 (2018), and, on February 27, 2019, found by clear and convincing evidence that the father is unwilling or unable to protect the child from jeopardy or take responsibility for the child within a time that is reasonably calculated to meet the child's needs, and determined that termination of the father's rights is in the best interest of the child, *see* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii) (2018).

[¶4]  The court based its decision on the following findings, which are supported by the record.

> The family's issues involved untreated marijuana and alcohol misuse, untreated mental health problems, and relationship issues. The child was not safe in the care of either parent.

---

[1]  On November 17, 2017, the Department filed an amended child protection petition and request for a preliminary protection order to correct a clerical error contained in the previous petition, which listed an incorrect agent for the Department.  The court (*Eggert, J.*) entered an amended preliminary order the same day.

[2]  The mother consented to the termination of her parental rights and is not a party to this appeal. *See* 22 M.R.S. § 4055(1)(B)(1) (2018).  We focus on the procedural history and findings pertaining to the father.

. . . .

[The father] is 29 and has lived in a one-bedroom . . . apartment for three months.  He was homeless before then from February 2018. . . .

The father admits to a lengthy history of excessive alcohol and marijuana use. . . .  He was assessed for [a] . . . substance use program in March 2018, entered it in April, and completed the program at the end of August 2018.  The program included regular intensive outpatient treatment for substance use and parenting education sessions with some individual counseling late in the program.

Drug testing was [also] part of the program.  His testing showed [marijuana] use during each of the 21 weeks.  [The father] would typically admit his ongoing use of marijuana.  He also had positive alcohol tests for the first few weeks and then negative test[s] for the last four months . . . .  The [substance use program] clinician had concerns about [the father] at [the] program's end for his lack of sober supports, a need for more AA attendance, and ongoing [marijuana] use.

[The father] admitted to drinking [alcohol] days before the hearing and to using marijuana every other day or so presently. [The father's] aftercare program included going to AA/NA support meetings and ongoing counseling.  He did not go to counseling after August 2018 and did not attend AA or NA, instead focusing on getting housing.  The father did not work during the last year or so and is still unemployed.[3] . . .

---

[3] When asked about his employment at the termination hearing, the father testified that he did not have a job at the time of the hearing, and that since the child came into custody, he has "worked a couple different jobs, but they didn't last long."  Because the record here contains ample other evidence on which the court could base its parental unfitness and best interest determinations, this factual error is harmless. *See In re Child of Ronald W.*, 2018 ME 107, ¶ 7 n.2, 190 A.3d 1029 ("A factual error in a child protection order is harmless if it is highly probable that the error did not prejudice the parents or contribute to the result in the case."); *see also* M.R. Civ. P. 61.

[The father] also suffers from ongoing anxiety which he treats only by taking [a] "deep breath." . . .

He also failed to attend several DHHS requested drug tests, going only [twice] . . . .  Generally, his testing history is consistent with regular marijuana and occasional alcohol use.

[The father] did attend [a] risk assessment in February 2018 related to sexual reoffending.  He had a history of youthful sex abuse before age ten and was abused himself when he was three.  He also has a history of pornography use . . . .  [The psychologist] felt [the father] was at an average risk of reoffending.  [The father] has a recent conviction for theft of alcohol.

[The father] and the child's mother were arguing and he grabbed her wrists leading to a domestic violence arrest.  The mother complained that he was controlling in their relationship.  She sought a protection from abuse order against [the father] in 2018 but apparently did not follow through.  The GAL describes the parents' relationship as "rocky" and "off and on."  That relationship today is still unclear.  He has not addressed domestic violence concerns.

. . . .

. . . The GAL is supportive of termination of the father's rights.  She feels [the child] is not safe with either parent. . . .

. . . [The father's] only real progress relates to the recently acquired apartment and attending . . . visits with his son.

. . . .

. . . [The father's] ongoing substance use and mental health issues, his continued use of substances, his history of sexual abuse and domestic violence involvement, and limited treatment for the above show that his life is still somewhat chaotic.  He cannot focus on his son's medical and other needs as a 15-month-old.  It is highly

likely the father's issues will continue for months if not years. He cannot meet his own needs and has not addressed many of his parenting deficits . . . .

. . . .

Termination will provide the permanence, stability, and consistency that this boy needs. The father has had since November 2017 to remedy his serious parenting issues. [The child] has been in custody all but a couple weeks of his short life. [The child] is bonded with [his foster family]. The[y] have cared well for him for 15 months. . . . [The father] still will require many months, if not longer, to become an appropriate caregiver. . . . [The child] can obtain permanence and stability soon if rights are terminated, freeing [the child] for adoption. . . .

## II. LEGAL ANALYSIS

[¶5] The father contends that the court erred in determining that he is unfit to parent and that it is in the best interest of the child to terminate his parental rights. "We review the trial court's factual findings that a parent is unfit and that termination of parental rights is in the child's best interest for clear error and the ultimate decision to terminate parental rights for an abuse of discretion." *In re Child of Kelcie L.*, 2018 ME 57, ¶ 3, 184 A.3d 387.

[¶6] With respect to the issue of parental unfitness, the father asserts that "[a]lthough he may not have achieved the level of participation in the reunification plan that DHHS was looking for, he did well enough to assure that no serious harm would come to the child." Contrary to the father's contention,

6

the court did not err in determining that, despite the father's progress, he remains unable to protect the child from jeopardy or take responsibility for the child within a time that is reasonably calculated to meet the child's needs. 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii); *see In re Hope H.*, 2017 ME 198, ¶ 10, 170 A.3d 813 ("Marginal progress toward reunification and a simple desire to remain [a] parent[] is not enough to ameliorate jeopardy and meet the child[]'s needs.").[4]   As the court found, with support in the record, the father had engaged only in "limited treatment" for his substance abuse, mental health and sexual abuse issues.  Furthermore, the father admitted to his continued use of substances in the days leading up to the hearing.

[¶7]   The father also asserts that the court abused its discretion by determining that termination of his parental rights is in the child's best interest because he "needed very little additional time to show the trial court and DHHS that he could parent."  At the time of the termination proceeding, the child was fifteen months old and had been in the Department's custody since he was

---

[4]  In his brief, the father does not dispute the court's finding that he is unwilling or unable to take responsibility for the child within a time that is reasonably calculated to meet the child's needs.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(ii) (2018).  We have repeatedly held that "[i]f any one of the alternative bases of parental unfitness found by the court is supported by clear and convincing evidence, the determination of unfitness will be affirmed," *In re A.H.*, 2013 ME 85, ¶ 14, 77 A.3d 1012, and that a parent's failure to contest an alternate finding in his or her brief "constitutes a waiver of [that] issue on appeal," *In re Alexavier G.*, 2017 ME 227, ¶ 1 n.1, 174 A.3d 891.

sixteen days old. The trial court found, based on competent evidence in the record, that the father would "require *many months*, if not longer, to become an appropriate caregiver." (Emphasis added.) We have repeatedly stated that "the court must examine from the child's perspective—not the parent's—the time within which the parent can take responsibility for a child and protect that child from jeopardy." *In re Children of Tiyonie R.*, 2019 ME 34, ¶ 6, 203 A.3d 824. As in *In re Child of Mercedes D.*, 2018 ME 149, ¶ 22 n.5, 196 A.3d 888, the father here "will remain parentally unfit for too long as measured from the child's perspective, and . . . the child's best interest will be served with the permanence that comes with adoption . . . ." Accordingly, the court did not err or abuse its discretion by concluding that termination is in the best interest of the child.

The entry is:

Judgment affirmed.

---

Philip Notis, Esq., Portland, for appellant father

Aaron M. Frey, Attorney General, and Zack Paakkonen, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket number PC-2017-75
For Clerk Reference Only